**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **CODY RIMMER** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.** |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **CUMBERLAND COUNTY, TENNESSEE, HOLDEN ATKINSON, BENJAMIN BRODERDORF, and DEVYN TEMPLETON** | ) | **JURY DEMAND** |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

1. **Plaintiff Cody Rimmer** ("Plaintiff" or "Mr. Rimmer") brings this civil rights claim for damages against **Defendant Cumberland County, Tennessee, as well as Holden Atkinson, Benjamin Broderdorf, and Devyn Templeton in their individual capacities.** Plaintiff's claims arise from an October 16, 2025 incident where Cumberland County Sheriff's Office ("CCSO") Deputy Holden Atkinson unnecessarily shoved Mr. Rimmer head-first into the hood of a patrol car and then fired his taser into Mr. Rimmer's back at least six times. Deputy Atkinson's actions caused Mr. Rimmer's head to strike the asphalt. After Mr. Rimmer lost consciousness, Deputy Atkinson and Deputy Devyn Templeton jumped on and handcuffed his unconscious body. Deputy Benjamin Broderdorf observed the excessive force yet failed to intervene. Upon information and belief, other deputies, were present at the scene, however, their identities and level of participation in the use of

force are unknown despite diligent efforts. Mr. Rimmer survived the assault but suffered severe injuries, including an acute subarachnoid hemorrhage, requiring extensive medical treatment. His traumatic injuries are potentially permanent. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and Tennessee state law, alleging that Defendants' use of force against Mr. Rimmer violated his Fourth Amendment right to be free from excessive force.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367(a).
3. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2) because all claims related to this case occurred in this district.

## PARTIES

4. Plaintiff Cody Rimmer is an adult male citizen and resident of Cumberland County, Tennessee. He was twenty-two years old at the time of the incident.
5. Defendant Cumberland County, Tennessee ("Cumberland County") is a political subdivision within the State of Tennessee and is a "person" as contemplated by 42 U.S.C. § 1983. It may be served with process through its County Executive/Mayor, Allen Foster ("the Mayor"), 2 N. Main Street, Crossville, Tennessee 38555.
6. Defendant Holden Atkinson ("Defendant Atkinson" or "Mr. Atkinson") is an adult resident and citizen of Cumberland County, Tennessee. At all times material herein, Mr. Atkinson was employed by Defendant Cumberland County as a Deputy. Mr. Atkinson is

being sued in his individual capacity. At all times material herein, Mr. Atkinson was acting under the color of state law and is a "person" as contemplated by 42 U.S.C. § 1983. He may be served with process at his place of employment, Cumberland County Sheriff's Office, 90 Justice Center Dr., Crossville, TN 38555.

7. Defendant Benjamin Broderdorf ("Defendant Broderdorf" or "Mr. Broderdorf") is an adult resident and citizen of Cumberland County, Tennessee. At all times material herein, Mr. Broderdorf was employed by Defendant Cumberland County as a Deputy. Mr. Broderdorf is being sued in his individual capacity. At all times material herein, Mr. Broderdorf was acting under the color of state law and is a "person" as contemplated by 42 U.S.C. § 1983. He may be served with process at his place of employment, Cumberland County Sheriff's Office, 90 Justice Center Dr., Crossville, TN 38555.

8. Defendant Devyn Templeton ("Defendant Templeton" or "Mr. Templeton") is an adult resident and citizen of Cumberland County, Tennessee. At all times material herein, Mr. Templeton was employed by Defendant Cumberland County as a Deputy. Mr. Templeton is being sued in his individual capacity. At all times material herein, Mr. Templeton was acting under the color of state law and is a "person" as contemplated by 42 U.S.C. § 1983. He may be served with process at his place of employment, Cumberland County Sheriff's Office, 90 Justice Center Dr., Crossville, TN 38555.

## FACTUAL BACKGROUND

### A. Defendant Cumberland County Exercises its Law Enforcement Function through the Cumberland County Sheriff's Office

9. Defendant Cumberland County is a political subdivision of the State of Tennessee exercising governance authority over Cumberland County, Tennessee.

10. Cumberland County's governing authority is vested in an elected County Mayor and elected County Commission. The Sheriff of Cumberland County is separately elected and is not subject to the supervision or control of the County Mayor or the County Commission in the operation of the CCSO.

11. CCSO is the agency responsible for law enforcement in Cumberland County.

12. The Sheriff leads the CCSO and has unilateral authority to direct the CCSO's operations, policies, training, strategy, and internal disciplinary systems and determinations. The Sheriff is therefore the final policymaker for Cumberland County with respect to law enforcement, use of force, training, supervision, and discipline within the CCSO.

### B. CCSO's Use-of-Force Policy and Recent Custom of Using Excessive Force During Traffic Stops

13. Upon information and belief, the CCSO's use-of-force policies allow officers to use unconstitutionally excessive force so long as the officer claims that he/she feared that the suspect posed a risk of death or serious injury.

14. Upon information and belief, the CCSO's use-of-force training materials allow officers to use unconstitutionally excessive force so long as the officers claim that he/she feared that the suspect posed a risk of death or serious injury.

15. The CCSO has a custom of defending CCSO officers who have used excessive force, even when that force has been unconstitutional, so long as the officer claims that he/she feared that the suspect posed a risk of death or serious injury.

16. In 2020, a CCSO deputy used excessive force on an innocent passenger while pursuing a speeding vehicle in Cumberland County.[1]

[1] *Farmer v. Cumberland County, Tennessee and Ryan Ashburn*, No. 2:21-cv-00026 (M.D. Tenn. 2021).

17. Upon approaching the vehicle, the deputy violently pulled the innocent passenger out of the vehicle, kneed him in the head, and deployed a series of vicious blows to his head and body.

18. The deputy then deployed his taser at least once.

19. The plaintiff in that case suffered serious physical and emotional injuries.

20. Cumberland County defended the CCSO deputy associated with this complaint.

21. Upon information and belief, that case was resolved pre-trial through a settlement agreement.

22. In 2021, a CCSO deputy used excessive force after stopping to question a 31-year-old female whose vehicle was broken down on the side of the road.[2]

23. After allegedly finding a meth pipe, which was never corroborated, the deputy pushed the woman to the ground, tased her at least twice, and punched her repeatedly while she pleaded for help.

24. The plaintiff in that case was immediately taken to the hospital with serious emotional and physical injuries.

25. Cumberland County defended the CCSO deputy associated with this complaint.

26. Upon information and belief, that case was also resolved pre-trial through a settlement agreement.

27. Upon information and belief, the CCSO did not revise its use-of-force policies or officer training materials in response to either incident, even though neither plaintiff posed a risk of death or serious injury.

---

[2] *Calloway v. Dixon*, No. 2:22-cv-00005 (M.D. Tenn. 2022).

28. Upon information and belief, the CCSO did not reprimand Deputy Dixon in response to the allegations set forth in *Calloway v. Dixon*.

### C. Cody Rimmer

29. At the time of the incident at issue in this case, Mr. Rimmer was 22 years old.

30. He worked at Crossville Vapor, a popular e-cigarette store in Cumberland County, Tennessee.

31. On or around July 15, 2024, Mr. Rimmer had his left eye removed after an accident involving fireworks. He now wears a prosthetic left eye.

32. A few months later, on or around October 28, 2024, Mr. Rimmer was injured in a serious car accident. In that accident, he broke his back and fractured his skull.

33. Over the following year, Mr. Rimmer underwent extensive treatment, including a craniectomy that left a plastic plate attached to his skull with titanium fasteners.

34. Because he could not work and was incurring significant medical bills, the owner of Crossville Vapor put donation jars around the store to support Mr. Rimmer's recovery. Many Cumberland County residents learned about Mr. Rimmer's accident and treatments through fundraising efforts at Crossville Vapor.

35. Upon information and belief, Defendants Atkinson, Broderdorf, and Templeton knew about Mr. Rimmer's injuries.

### D. October 16, 2025

36. On October 16, 2025, around 6:30 P.M., Mr. Rimmer was driving his 2007 Silver Chevrolet Silverado on POW Camp Road in Cumberland County, heading north.

37. As he approached the intersection of U.S. Highway 70, he had a minor traffic accident with a motorcycle.

38. Upon information and belief, the motorcyclist, Billy Conley, told Mr. Rimmer that he was not concerned about the minor accident.

39. Upon information and belief, no one was injured and neither vehicle sustained any significant damage.

40. Mr. Conley left the scene.

41. Mr. Conley was driving on a revoked license and was not the owner of the motorcycle.

42. Mr. Rimmer had no way of knowing this information at the time of the accident.

43. After Mr. Conley left the scene, Mr. Rimmer continued driving down U.S. Highway 70 toward West Avenue in Crossville, Tennessee.

44. Upon information and belief, neither Mr. Conley nor Mr. Rimmer contacted Tennessee Highway Patrol ("THP") to report their minor accident.

45. Around 6:44 P.M., THP Sgt. Greg Tramel responded to a report about the accident. He arrived at Pomona Market, a nearby convenience store, where he met Brad Demetro, the only person identified in the THP crash report as an alleged witness.

46. After speaking with him, Sgt. Tramel learned that Mr. Demetro did not actually witness the accident.

47. Mr. Demetro found the motorcycle driven by Mr. Conley abandoned on the side of the road and moved it to the Pomona Market parking lot.

48. While Sgt. Tramel discussed the matter with Mr. Demetro and an unnamed CCSO Deputy at Pomona Market, Defendant Atkinson located Mr. Rimmer's truck at the intersection of U.S. Highway 70 and West Avenue and began following him with his blue lights on.

49. When Mr. Rimmer realized that Defendant Atkinson was following him, he slowed to a stop approximately 50 feet from the intersection of West Avenue and U.S. Highway 70.

50. Passing cars began honking their horns at Mr. Rimmer because his truck was obstructing traffic on West Avenue, a very busy four-lane road, and was blocking the entrance to Brad Hardman Insurance and Dig and Find Discount Store.

51. Therefore, Mr. Rimmer slowly pulled forward and stopped again approximately 50 more feet toward the median outside of the Game X Change, so that he could safely discuss Defendant Atkinson's concerns without obstructing traffic or blocking the entrance to two local businesses.

52. Once Mr. Rimmer stopped outside of the Game X Change, Defendant Atkinson began shouting, "get out of the fucking truck," as he walked towards the parked vehicle.

53. As Defendant Atkinson approached the truck, he drew his service weapon.

54. Defendant Atkinson forcefully opened the driver's side door with his pistol drawn and ordered Mr. Rimmer to exit the vehicle.

55. Mr. Rimmer complied with Defendant Atkinson's command and immediately exited his truck.

56. Around the same time, Defendant Benjamin Broderdorf arrived at the scene to assist Defendant Atkinson.

57. Defendant Atkinson led Mr. Rimmer by the arm to his patrol vehicle without resistance from Mr. Rimmer.

58. As they walked, Defendant Atkinson holstered his pistol, indicating that he did not believe that Mr. Rimmer posed any threat to his safety.

59. Upon information and belief, neither Defendant Atkinson nor Defendant Broderdorf told Mr. Rimmer why he was being stopped.

60. Without informing Mr. Rimmer that he was being placed under arrest, Defendant Atkinson suddenly slammed Mr. Rimmer head-first onto the hood of his patrol car while Defendant Broderdorf monitored the scene.

61. Upon information and belief, Mr. Rimmer did nothing to resist, threaten, or disobey Defendant Atkinson at any time.

62. When Defendant Atkinson's violent conduct caused Mr. Rimmer's head to slam into the hood of the patrol car, the impact left Mr. Rimmer dazed and semi-conscious.

63. Nevertheless, Defendant Atkinson, without provocation from Mr. Rimmer, unnecessarily fired his taser into Mr. Rimmer's back at least six times.

64. Upon information and belief, Defendant Atkinson tased Mr. Rimmer at least six times in rapid succession and did not pause between cycles to assess whether each additional use of force was justified.

65. Upon information and belief, Mr. Rimmer lost consciousness after Defendant Atkinson unnecessarily tased him.

66. After being tased and losing consciousness, Defendant Atkinson pushed Mr. Rimmer to the ground and caused him to strike his head on the asphalt.

67. Defendant Atkinson knew that Mr. Rimmer struck his head on the asphalt.

68. Moments later, Defendant Devyn Templeton arrived at the scene.

69. Upon information and belief, Defendant Templeton arrived in his personal vehicle and identified himself as a Deputy, participated in Mr. Rimmer's arrest, and otherwise acted by virtue of or under color of his office.

70. Defendant Templeton knew Mr. Rimmer from Crossville Vapor and was aware that Mr. Rimmer had recently undergone a craniectomy.

71. While Defendant Templeton ran from his parked car toward the scene, Defendant Atkinson jumped on top of Mr. Rimmer, who was already unconscious.

72. With knowledge of Mr. Rimmer's health condition, Defendant Templeton also jumped on top of his unconscious body.

73. Bystanders who were watching the encounter from the parking lot of Crossville Vapor, approximately 25 feet from the Game X Change, asked the Defendants to handle him with care because he had a plate in his skull from his recent craniectomy.

74. Defendant Broderdorf told the bystanders to "mind their fucking business."

75. Defendants Atkinson and Templeton were close enough to hear bystanders state that Mr. Rimmer had a plate in his skull.

76. Despite this notice, Defendant Atkinson continued applying force to Mr. Rimmer's unconscious body alongside Defendant Templeton.

77. Defendant Broderdorf did nothing to stop Defendants Atkinson and Templeton as he continued shouting profanities at concerned bystanders.

78. Broderdorf even said that Mr. Rimmer was "lucky he didn't lose his life for that stupid shit," implying that Defendant Atkinson should have killed him.

79. Defendants Atkinson and Templeton eventually and needlessly placed Mr. Rimmer's unconscious body in handcuffs.

80. A few minutes later, the Emergency Medical Services ("EMS") ambulance arrived and took Mr. Rimmer to Cumberland Medical Center, where he was diagnosed with an acute subarachnoid hemorrhage.


Case 2:26-cv-00077 Document 1 Filed 10/13/26 Page 10 of 18 PageID #: 10

81. At the hospital, Defendant Broderdorf actively prevented Mr. Rimmer's family from seeing Mr. Rimmer, who was in critical condition, because he was "under arrest."

82. When Mr. Rimmer's family asked for additional information about the incident, Defendant Broderdorf falsely stated that Mr. Rimmer had allegedly "reached for a gun in his center console," causing Defendant Atkinson to "fear for his life."

83. Mr. Rimmer's family emphasized that they could not believe that he would threaten anyone, let alone a police officer.

84. Defendant Broderdorf responded by speculating falsely that Mr. Rimmer "reached for his gun" because he was having an "emotional episode."

85. At no time did Mr. Rimmer ever reach for a firearm or engage in any action that could be perceived as threatening to a police officer.

86. Because of the truck's elevated ride height and tinted windows, Defendant Atkinson could not have identified what, if anything, Mr. Rimmer might have reached for.

87. At no point during the stop did any Defendant find a firearm on Mr. Rimmer.

88. Not only does Mr. Rimmer deny engaging in any threatening behavior toward the officers, but he has no documented history of violence, assault, or aggressive behavior, nor does he have a reputation for engaging in any such behavior.

89. Because Mr. Rimmer's injuries required a higher level of care than Cumberland Medical Center could provide, it requested for an interfacility transport to the University of Tennessee Medical Center ("UTMC").

90. Mr. Rimmer was then airlifted to UTMC, where he underwent a series of tests and procedures which confirmed his diagnosis of acute subarachnoid hemorrhage.

91. Since October 16, 2025, Mr. Rimmer has suffered from memory loss, confusion, anxiety, extreme fatigue, and other symptoms of physical and mental harm.

92. Mr. Rimmer's injuries are potentially permanent, and he continues to require medical care and incur financial loss.

93. As a direct and proximate result of Defendants' conduct, Mr. Rimmer has incurred past medical expenses and will incur future medical expenses. He has also suffered physical pain, mental and emotional distress, humiliation, loss of enjoyment of life, loss of income and loss of earning capacity.

94. Upon information and belief, the CCSO has not conducted any investigation into the October 16, 2025 incident.

95. Defendants Atkinson, Broderdorf, and Templeton all remain employed by Cumberland County as deputies.

96. Mr. Rimmer was ultimately charged with: 1) failure to yield right of way in violation of Tenn. Code Ann. § 55-8-128; 2) leaving the scene of an accident in violation of Tenn. Code Ann. § 55-10-102(b)(2); and 3) resist stop, arrest, search (no weapons) in violation of Tenn. Code Ann. § 39-16-602.

97. Mr. Rimmer's preliminary hearing was rescheduled five times.

98. The District Attorney requested at least one continuance, which was granted, causing at least one of the delays.

99. Defendant Atkinson was called as a witness at Mr. Rimmer's preliminary hearing on July 16, 2026 in Cumberland County General Sessions Court but did not testify that he believed that Mr. Rimmer had reached for a firearm.

100. After Mr. Rimmer's preliminary hearing, all of his charges were bound over to the grand jury in Cumberland County Circuit Court.

101. Mr. Rimmer's arraignment in Circuit Court, which was originally scheduled for September 1, 2026, has already been postponed until October 25, 2026 – after the one-year statute of limitations expires on his claims against the Defendants.

102. Because of these delays, Mr. Rimmer has not yet been able to obtain critical information, such as body camera footage.

103. Mr. Rimmer files this action now because the statute of limitations on his claims will expire before the pending criminal proceedings are resolved.

104. The use of force challenged in this Complaint occurred after any conduct that could form the basis for the pending criminal charges against Mr. Rimmer, including the stop, arrest, and search (no weapons) under Tennessee Code Annotated § 39-16-602.

105. Mr. Rimmer was dazed and semi-conscious when Defendant Atkinson deployed his taser at least six times in rapid succession, and he was fully unconscious when Defendants Atkinson and Templeton jumped on him and handcuffed him.

106. Therefore, this action may proceed regardless of the outcome of any alleged criminal charges against Mr. Rimmer.

## CLAIMS FOR RELIEF

### COUNT I: EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C § 1983)

### (DEFENDANT CUMBERLAND COUNTY; DEFENDANTS HOLDEN ATKINSON AND DEVYN TEMPLETON IN THEIR INDIVIDUAL CAPACITIES)

107. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

108. On October 16, 2025, Defendant Atkinson used excessive and unreasonable force by slamming Mr. Rimmer head-first onto the hood of the patrol car, tasing him in the back at least six times, pushing him to the ground, and jumping on and forcefully detaining him while he was unconscious. Mr. Rimmer posed no threat of imminent harm, was not fleeing an arrest, and was not resisting arrest.

109. Defendant Templeton used excessive, unreasonable force by jumping on and forcefully detaining Mr. Rimmer's unconscious body alongside Defendant Atkinson.

110. Defendants Atkinson, and Templeton acted with reckless and callous indifference to Mr. Rimmer's federally protected rights.

111. Defendants Atkinson, and Templeton were acting by virtue of or under color of their office when they used excessive force on Mr. Rimmer.

112. Defendant Cumberland County caused its officers to assault and tase Mr. Rimmer by:

a. Maintaining a custom of tolerating and defending its deputies' unconstitutional uses of force, despite having actual and constructive notice of this practice.

b. Failing to revise its use-of-force policies or training in response to previous incidents.

c. Failure to adequately train deputies on its use-of-force policies.

d. Ratifying the conduct alleged in this Complaint by failing to conduct an investigation or impose discipline, and by continuing to employ Defendants Atkinson, Broderdorf, and Templeton as deputies.

113. As a direct and proximate result of the Defendants' conduct, Mr. Rimmer suffered serious physical, legal, emotional, Constitutional, and financial harm and will continue to suffer harm and incur loss in the future.

## COUNT II: FAILURE TO INTERVENE (42 U.S.C. § 1983)

### (DEFENDANT CUMBERLAND COUNTY; DEFENDANTS HOLDEN ATKINSON, BENJAMIN BRODERDORF, AND DEVYN TEMPLETON IN THEIR INDIVIDUAL CAPACITIES)

114. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

115. Defendant Broderdorf had reason to know that Defendants Atkinson and Templeton were using excessive force when he saw them push Mr. Rimmer to the ground and jump on his unconscious body.

116. Defendant Broderdorf had both the means and an opportunity to prevent the use of excessive force by Defendants Atkinson and Templeton, yet he failed to do so. Instead, Defendant Broderdorf shouted profanities at concerned bystanders.

117. Defendants Atkinson and Templeton each observed the other's use of excessive force against Mr. Rimmer's unconscious body.

118. Defendants Atkinson and Templeton had the means and a realistic opportunity to intervene, and each failed to do so.

119. Defendant Cumberland County caused Defendants Atkinson, Broderdorf, and Templeton's failure to intervene by:

a. Maintaining a custom of tolerating and defending its deputies' unconstitutional uses of force.

b. Failing to adequately train its officers on the duty to intervene.

120. As a direct and proximate result of the Defendants' conduct, Mr. Rimmer suffered serious physical, legal, emotional, Constitutional, and financial harm and will continue to suffer harm and incur loss in the future.

**COUNT III: WRONGS, INJURIES, LOSSES, AND DAMAGES RESULTING FROM DEPUTIES' ACTS (TENN. CODE ANN. § 8-8-302)**

**(DEFENDANT CUMBERLAND COUNTY)**

121. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

122. Pursuant to Tenn. Code Ann. § 8-8-302, Defendant Cumberland County is liable for the wrongful acts of Defendants Atkinson, Broderdorf, and Templeton, who, at all relevant times, were acting by virtue of and under color of their office as deputies of the CCSO, including their assault, battery, and use of excessive force in violation of the Fourth Amendment, actionable under 42 U.S.C. § 1983.

123. Defendant Atkinson intentionally made harmful physical contact with Mr. Rimmer. Specifically, he needlessly slammed Mr. Rimmer head-first onto the hood of his patrol car before tasing him at least six times and jumping on his unconscious body. Mr. Rimmer posed no threat of imminent harm, was not fleeing an arrest, and was not resisting arrest.

124. Defendant Templeton intentionally made harmful physical contact with Mr. Rimmer. Specifically, he jumped on and forcefully detained Mr. Rimmer's unconscious body alongside Defendant Atkinson.

125. Defendants Atkinson and Templeton then handcuffed Mr. Rimmer's unconscious body.

126. The force used by Defendants Atkinson, and Templeton was beyond excessive and completely unconscionable by any reasonable standard.

127. Defendants Atkinson, Broderdorf, and Templeton had both the means and an opportunity to prevent the use of excessive force by Defendants Atkinson and Templeton, yet they failed to do so.

128. By failing to prevent the use of excessive force, Defendants Atkinson, Broderdorf, and Templeton all caused Mr. Rimmer to incur wrong, loss, damages, and expenses.

129. Because Defendants Atkinson, Broderdorf, and Templeton caused Mr. Rimmer's injury while acting by virtue of or under the color of their office, Defendant Cumberland County is liable to Mr. Rimmer for their actions and failures to act pursuant to Tenn. Code Ann. § 8-8-302.

130. As a direct and proximate result of the Defendants' conduct, Mr. Rimmer suffered serious physical, legal, emotional, Constitutional, and financial harm and will continue to suffer harm and incur loss in the future.

## **<u>REQUEST FOR RELIEF</u>**

WHEREFORE, these premises considered, Plaintiff prays:

1. That the Defendants Answer this Complaint within the time provided by law.
2. That this cause be tried by a jury of his peers.
3. That judgment for the Plaintiff enter against the Defendants on each count.
4. That the Plaintiff be awarded nominal damages on all counts.
5. That the Plaintiff be awarded compensatory damages, including but not limited to past and future medical expenses, past and future lost earnings, lost earning potential, and for

permanent impairment, pain and suffering, emotional distress, and loss of enjoyment of life, in an amount determined by the jury.

6. That the Plaintiff be awarded punitive damages against the Defendants in their individual capacities in an amount to be determined by the jury.
7. That the Plaintiff be awarded his attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988 and F.R. Civ. Pro. 54(d).
8. That the court costs in this matter be taxed to Defendants.
9. That the Plaintiff be awarded pre- and post-judgment interest against Defendants.
10. That the Plaintiff be awarded all other relief to which it may appear it is entitled in the interests of justice.

**Respectfully submitted**,


*s/ Jennifer Morton*
Jennifer Morton (BPR # 015585)
Summer McMillan (BPR # 020296)
Cheyenne Peters (BPR # 043189)
**JENNIFER MORTON LAW, PLLC**
8217 Pickens Gap Rd.
Knoxville, TN 37920
(865) 579-0708
jen@jmortonlaw.com
summer@jmortonlaw.com
cheyenne@jmortonlaw.com

*s/ Kyle Mothershead*
Kyle Mothershead (BPR # 22953)
**RELENTLESS ADVOCACY, PLLC**
7000 Executive Center Drive, Suite 240
Brentwood, TN 37027
(615) 891-3901
kyle@relentlesslaw.com